Stephen G. Larson (SBN 145225)
slarson@larsonllp.com
A. Alexander Lowder (SBN 269362)
alowder@larsonllp.com
Emilie J. Zuccolotto (SBN 291388)
ezuccolotto@larsonllp.com
**LARSON LLP**
555 South Flower Street, Suite 4400
Los Angeles, California 90071
Telephone: (213) 436-4888
Facsimile: (213) 623-2000

PRATA & DALEY LLP
Robert J. Prata (Bar No. 162600)
rprata@pratadaley.com
Todd A. Daley (Bar No. 168742)
tdaley@pratadaley.com
515 South Figueroa Street
Suite 1515
Los Angeles, CA 90071
Telephone:   (213) 622-5600
Facsimile:   (213) 622-5623

Attorneys for Plaintiff
MELISSA O'BRIEN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MELISSA O'BRIEN,<br><br>    Plaintiff,<br><br>vs.<br><br>JOHNSON & JOHNSON MEDICAL DEVICES COMPANIES; DEPUY SYNTHES COMPANIES; DOES 1 TO 10.<br><br>    Defendants. | Case No. 5:19-cv-00619-CJC SP(x)<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION *IN LIMINE* NO. 2 TO EXCLUDE DEFENDANT'S EXPERT NICHOLAS BENETATOS**<br><br>[*Concurrently filed with Declaration of A. Alexander Lowder and [Proposed] Order*]<br><br>Date:    March 15, 2021<br>Time:    3:00 p.m.<br>Place:   9B<br><br>Judge:   Cormac J. Carney<br><br>Trial: March 23. 2021 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that that on March 15, 2021 at 3:00 p.m., at the pretrial conference, or as soon thereafter as the matter may be heard in Courtroom 9B of the above-entitled Court, Plaintiff Melissa O'Brien ("Plaintiff") will move the Court for an Order *in limine* excluding any and all testimony, references to testimony, or argument relating to the testimony of Defendant's expert Nicholas Benetatos, Ph.D regarding FDA compliance or the performance of medical devices generally.

This motion is made pursuant to Rules 403 and 702 of the Federal Rules of Evidence, on the grounds that Dr. Benetatos's proffered testimony regarding Defendant's regulatory submissions and the performance of medical devices generally are not relevant to any issue in this case, and that any probative value of such proffered testimony, argument, or reference on these topics is substantially outweighed by the danger of undue prejudice, confusing the issues, misleading the jury, or an undue consumption of time. This Motion is based upon the following Memorandum of Points and Authorities, the attached declaration of A. Alexander Lowder and attached exhibits, all other papers and records filed in this matter, and any other argument or evidence that may be presented at or in connection with the hearing on this motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on January 15, 2021.

Dated:  January 25, 2021        LARSON LLP

By:   /s/ Stephen G. Larson
    Stephen G. Larson
    A. Alexander Lowder
    Emilie J. Zuccolotto

PRATA & DALEY
    Robert J. Prata
    Todd A. Daley

Attorneys for Plaintiff
MELISSA O'BRIEN

## I. INTRODUCTION

Defendant DePuy Synthes Companies should be precluded from offering the testimony of its designated expert, Nicholas Benetatos, Ph.D, regarding Defendant's purported compliance with regulations promulgated by the Food and Drug Administration ("FDA").[1] Dr. Benetatos should also be precluded from offering testimony regarding the general performance of medical devices. Dr. Benetatos's proffered testimony is not relevant to any issue in this case, and if presented at trial it would create undue prejudice, confuse the issues for the jury, and waste court time.

Plaintiff Melissa O'Brien's claims arise from Defendant's negligent design of its medical device, a prosthetic radial head in the elbow called the Synthes Radial Head (the "Device"). In 2016, following a fall, a surgeon implanted the Device into Plaintiff's elbow. The prosthetic head was designed to be held in place by a chemically etched "stem," which was inserted into a cavity in Plaintiff's radial bone. However, the chemical etching Defendant used on the "stem" caused the Device to loosen from micromotions against Plaintiff's bone acting in a saw-like manner, causing excruciating pain and requiring corrective surgeries. Defendant eventually issued a national recall of the Device due to "post-operative loosening," but it continues to deny negligence. Because Dr. Benetatos's opinion does not address the negligent design of the Device, it should be excluded.

Dr. Benetatos is a former employee of the FDA. By his own admission, Dr. Benetatos does not have any experience, expertise, or training designing medical implants. Furthermore, he does not have any expertise on the surface treatment used on the Device, or on surface treatments generally. Dr. Benetatos's proffered opinion is limited to Defendant's alleged compliance with FDA regulatory processes. But Defendant's purported compliance with FDA's regulations is not at issue in this

---

[1] Defendant acknowledged in its Disclosure Statement that DePuy Synthes Companies is owned by Johnson & Johnson Medical Devices Companies.

case. Moreover, Dr. Benetatos opinions do not speak to the principles or methodology of the testing Defendant conducted, or chose not to conduct, prior to submitting the Device to the FDA via the premarket notification process. Not only is Dr. Benetatos's proffered testimony not relevant, it carries a substantial risk of confusing the jury as to the issues in this case. Simply put, clearance through the FDA's premarket notification process is not a statement from the FDA that a product is safe. Likewise, compliance with the FDA's postmarket surveillance regulations does not reflect a determination by the FDA that a medical device is safe. Thus, Defendant should not be permitted to offer Dr. Benetatos's testimony regarding FDA compliance as a proxy for a finding on the issue of Defendant's negligence.

As to Dr. Benetatos's non-device specific opinion about the performance of medical devices generally, such an opinion would not assist the jury as to any disputed issue.

Accordingly, Plaintiff respectfully requests the Court grant the instant motion *in limine* to exclude Dr. Benetatos's testimony on the grounds that his proffered opinions are not relevant and any probative value is outweighed by the likelihood that it will confuse and mislead the jury.

## II.  RELEVANT BACKGROUND

Plaintiff's case is straightforward: the Device at issue and implanted in her elbow, a prosthetic radial head, was negligently designed because the chemical etching Defendant designed on the surface of the stem portion of the Device loosened when the unique loads of the elbow caused the sharp edges of the stem's surface to move within the bone cavity. The sharp edges of the stem's surface disrupted healing and debrided tissue, and the Device loosened, causing excruciating pain and limiting Plaintiff's range of motion. In December 2016, after Plaintiff began to experience pain from the Device, Defendant nationally-recalled the Device due to "the possibility of loosening post-operatively at the stem bone interface."

The Device, including the head and stem implanted, looks like this:



Defendant intends to offer Dr. Benetatos as a regulatory expert to opine on Depuy's compliance with the FDA's section 510(k) notification process, DePuy's postmarket surveillance obligations, and about the performance of medical devices generally. Exh. A to Declaration of A. Alexander Lowder ("Lowder Decl."); Deposition of Nicholas Benetatos, Transcript ("TR") TR 30:2-21. Indeed, Dr. Benetatos further testified that his expertise was the regulatory environment pertaining to the Device:

> So my role here is to analyze what the company did and how they prepared their regulatory submissions, and I did that through the lens of my own work preparing regulatory submissions, and to analyze and scrutinize that work as well as to clarify how the FDA reviews regulatory submissions and the process.

TR 27:17-22. At his deposition, Dr. Benetatos confirmed that he is not an expert on the design of medical implants, does not have any expertise regarding surface treatments, and did not evaluate the principles or methodology of any testing DePuy may have performed in connection with the design and production of the Device and the submissions to the FDA. TR 18:10-25; 28:7-29:10; 45:25-46:12. Dr. Benetatos is "not a medical doctor nor [is he] a statistician." TR 61:25-62:14. His opinion "did not include an in depth analysis of [sic] kind of medical aspects and potential

medical risks that are associated with a Radial Head Prosthesis." TR 86:6-20.

## III. LEGAL ARGUMENT

Motions *in limine* are well recognized in practice and by case law. See *Ohler v. United States* 529 U.S. 753, 758, fn. 3 (2000) ; *City of Pomona v. SQM North America Corp*. 866 F.3d 1060, 1070 (9th Cir. 2017) (noting that motions *in limine* "are useful tools to resolve issues which would otherwise clutter up the trial") (internal quotes omitted). Authority for these motions also may be implied from "the court's inherent power to manage the course of trials." *Luce v. United States* 469 U.S. 38, 41, fn. 4 (1984). Motions *in limine* may be used to challenge the admissibility of a parties' expert witnesses. *United States v. Alatorre*, 222 F.3d 1098, 1100 (9th Cir.2000) (district court properly ruled on motion to exclude expert as a motion *in limine* and was not required to hold a separate "*Daubert* hearing."); *Daubert v. Merrell Dow Pharmaceuticals, Inc. (Daubert II)* 43 F.3d 1311, 1318, fn. 10 (9th Cir. 1995).

### A. Dr. Benetatos Should Be Excluded Because His Anticipated Testimony Is Not Relevant

Expert testimony may be excluded if the underlying reasoning or methodology is invalid or irrelevant to the issues in the case. See *Daubert v. Merrell Dow Pharmaceuticals, Inc*. 509 US 579, 592 (1993). Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FRE 401; *Crawford v. City of Bakersfield* 944 F3d 1070, 1077 (9th Cir. 2019) ("[d]eciding whether a fact is of consequence in determining the action generally requires considering the substantive issues the case presents") (internal quotes omitted).

Dr. Benetatos's proffered testimony should be excluded because it is not relevant to whether the Device is defective, and Dr. Benetatos concedes that he is not offering an opinion on that issue. Dr. Benetatos was not designated to offer an

opinion regarding the surface treatment of the Device, and he testified that he is not an expert on surface treatments.  TR 45:11-46:12.  Furthermore, Dr. Benetatos did not conduct any testing of his own, and is not offering an independent opinion that the Device is not defective.  TR 28:7-17; 78:19-79:3; 86:6-20 ("I'm not a clinical expert or a physician; so my scope did not include an in depth analysis of [sic] kind of medical aspects and potential medical risks that are associated with a Radial Head Prosthesis.").

Dr. Benetatos's expertise and opinions in this case only pertain to regulatory affairs and compliance, including: the pre-market 510(k) notification for the Device; the post market actions taken by Defendant and post-market surveillance data; and very generally that the performance of any medical devices is multifactorial in nature.  Exh. B to Lowder Decl.; Defendant's Expert Disclosures 3:27-4:6; TR 30:5-19.  However, Dr. Benetatos's proposed testimony regarding Defendant's purported compliance with the 510(k) process or with the FDA's postmarket regulations does not speak to Defendant's negligent design of the Device.

As to the 510(k) process, "[i]f the FDA concludes on the basis of the § 510(k) notification that the device is substantially equivalent to a pre-existing device, it can be marketed **without further regulatory analysis**. . . ." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 478 (1996) (emphasis added).  "'The attraction of the substantial equivalence to manufacturers is clear.  [Section] 510(k) notification requires little information, rarely elicits a negative response from the FDA, and gets processed very quickly." *Id.* at 479 (quoting Adler, The 1976 Medical Device Amendments: A Step in the Right Direction Needs Another Step in the Right Direction, 43 Food Drug Cosm. L.J. 511, 516 (1988)).  Unlike the FDA's premarket approval process, the 510(k) requirements are not device specific, and only reflect "general concerns about device regulation generally." *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 322 (2008) (citing *Lohr*, 518 U.S. at 501); *see also PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 935 n.3 (9th Cir. 2010) ("510(k) clearance 'does not denote official approval of

the device.'") (citing 21 C.F.R. § 807.97).  Indeed, [a]ny representation that creates an impression of official approval of a device because of complying with premarket notification regulations is misleading and constitutes misbranding." 21 C.F.R. § 807.97.

It is clear that "the 510(k) process is focused on equivalence, not safety.  As a result, substantial equivalence determinations provide little protection to the public. . . . If the earlier device poses a severe risk or is ineffective, then the later device may also be risky or ineffective." *Lohr*, 518 U.S. at 493 (citations omitted).  Thus, Dr. Benetatos's proffered testimony regarding Defendant's alleged compliance with the 510(k) notification process is of no moment to the question of whether the Device was negligently designed.

Likewise, Dr. Benetatos's proposed testimony regarding Defendant's postmarket submissions to the FDA does not bear on the issues in this case. Whether Defendant completed its postmarket responsibilities, consistent with FDA expectations, is not an issue in this case.  More to the point, Dr. Benetatos's opinion regarding postmarket compliance with FDA regulations does not speak to the design of the device, or whether Defendant acted negligently in that regard.  As with his opinion on the 510(k) notification, Dr. Benetatos's opinion on postmarket surveillance does not address the Device specifically, but merely attempts to speak to Defendant's alleged compliance with FDA postmarket requirements generally. *See* TR 58:4-61:2.  Indeed, Dr. Benetatos conceded that he would not be offering an opinion on whether the Device was negligently designed.  TR 78:19-79:3.

As to Dr. Benetatos's final opinion, that performance of a medical device is multifactorial in general, such a general statement does not relate to the Device specifically and would not be helpful to the jury.

The only purpose for Dr. Benetatos's testimony is to improperly suggest to the jury that compliance with FDA's regulations precludes a finding of negligence. Dr. Benetatos's proffered opinions, however, fail to provide any analysis,

evaluation, or expertise specific to the design of the Device. Furthermore, it is clear that the regulations at issue are not a proxy for a determination by the FDA that a particular medical device is safe. Thus, Dr. Benetatos's testimony is not relevant and should be excluded.

### B. Dr. Benetatos Should Be Excluded Because Any Probative Value Is Substantially Outweighed By The Danger of Confusing The Issues And Misleading The Jury

A motion *in limine* may also be used to exclude documents and other materials whose "probative value is substantially outweighed" by the danger of undue prejudice, confusing the issues, misleading the jury, or an undue consumption of time. FRE 403. Even if Dr. Benetatos's testimony is relevant, he should still be excluded because any probative value from his testimony is substantially outweighed by the danger of confusing the issues and misleading the jury by suggesting that because Defendant complied with FDA regulations, the design of the Device was not negligent.

In *McEuin v. Crown Equip. Corp*. (9th Cir. 2003) 328 F3d 1028, 1033, the Ninth Circuit affirmed the trial court's exclusion of military specifications in a product liability action involving a forklift design. Specifically, defendant sought to introduce the military specifications that require forklifts to be built without doors, which the trial court properly excluded under FRE 403 because the admission of the military specifications would have resulted "in confusion of the issues for the jury as well as in an unnecessary waste of the court's time." *Id*. at 1034.

The same is true here. Dr. Benetatos seeks to testify that Defendant complied with the FDA regulatory process, which is not at issue, and does not reflect an official approval of the Device. Defendant's design of the Device is at issue. If Dr. Benetatos is permitted to testify that all regulatory requirements were followed, it will mislead the jury, confuse the issues, and be an unnecessary waste of the Court's time because such testimony does not absolve Defendant from liability or prove that

the design of the Device was not negligent. Similar to *McEuin*, Dr. Benetatos's testimony, any argument, or reference regarding Defendant's alleged compliance with the 510(k) process and the FDA's postmarket surveillance regulations does not mean that Defendant adequately and non-negligently designed the Device. Thus, the Court should exclude Dr. Benetatos's testimony, any argument, or reference to that topic on the grounds that its probative value is substantially outweighed by the danger that it will confuse the issues, mislead the jury, and be an undue consumption of time.

## IV. CONCLUSION

Dr. Benetatos's testimony is not relevant, but even if it was, its probative value is outweighed by its likelihood of confusing the issues, misleading the jury, and wasting the Court's time. Accordingly, Plaintiff requests that the Court grant Plaintiff's motion *in limine* excluding Dr. Benetatos's testimony.

Dated: January 25, 2021

LARSON LLP

By:  /s/ Stephen G. Larson
Stephen G. Larson
A. Alexander Lowder
Emilie J. Zuccolotto

PRATA & DALEY
Robert J. Prata
Todd A. Daley

Attorneys for Plaintiff
MELISSA O'BRIEN